**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Michael Strausbaugh,<br><br>    Petitioner,<br><br>v.<br><br>J.T. Shartle,<br><br>    Respondent. | No. CV-17-00333-TUC-JAS (BPV)<br><br>**REPORT**<br>**AND**<br>**RECOMMENDATION** |

Petitioner Michael Strausbaugh, who is currently incarcerated at the United States Penitentiary–Tucson, filed a Petition Under 28 U.S.C. § 2241 for a Writ of Habeas Corpus by a Person in Federal Custody. (Doc. 1.) Respondent filed a Return and Answer to the § 2241 Petition (Doc. 11), and Petitioner a Reply (Doc. 25). Both parties briefed the standard for evaluating regulatory restrictions on outgoing mail. (Docs. 29, 37.) This case has been referred to Magistrate Judge Bernardo P. Velasco for a Report and Recommendation pursuant to Local Rules of Civil Procedure 72.1 and 72.2. (Doc. 6 at 3.) The Court recommends the District Judge: (1) find that Petitioner does not have standing to raise a First Amendment claim; (2) find that the greater weight of the evidence supported the Bureau of Prisons' ("BOP") disciplinary decision; and (3) deny Petitioner's § 2241 Petition in its entirety.

**I.   SUMMARY AND PARTIES' POSTURE**

The basis for Petitioner's claims arise from the disciplinary measures taken by the BOP subsequent to Petitioner's attempted mailing of another inmate's ("J.M.")

Administrative Remedy Appeal ("Appeal") to the inmate's wife ("P.M."). J.M. was prohibited from mailing the Appeal to his wife directly, and the Disciplinary Hearing Officer ("DHO") found that Petitioner's actions constituted an attempt to circumvent the BOP's mail monitoring regulations. (Doc. 1 at 1.) The DHO sanctioned Petitioner with the loss of twenty-seven (27) days Good Conduct Time, and the loss of email and visitation privileges for one hundred eighty (180) days. (Ex. A, Att. 4, Doc. 11-3 at 18-19.)[1]

In Ground One, Petitioner claimed that his First Amendment rights were violated when the BOP reduced his Good Conduct Time because the regulations governing violations of mail monitoring procedures cannot meet the appropriate level of scrutiny for outgoing mail. (Doc. 1 at 10.) In Ground Two, Petitioner asserted that the DHO did not apply the "greater weight of the evidence" standard when it came to its decision, and the failure to do so violated 28 C.F.R. § 541.8(f). *Id*. at 15.

Respondent countered that Petitioner admitted he sent the mail, and he was afforded a proper investigation as mandated by due process. (Doc. 11 at 9-10.) Furthermore, the mail monitoring procedures meet the level of scrutiny required for prison mail; they serve an important security function. *Id*. at 12-13. Therefore, Petitioner's constitutional rights were not violated when he was disciplined for breaking these rules. *Id*. Furthermore, "some evidence" existed to support the DHO's determination, and because Petitioner's evidence was not contradictory to the evidence against him, only "some evidence" was necessary to support the decision, not the "greater weight of the evidence" that Petitioner suggests. *Id*. at 10-11.

The Court ordered that Respondent address whether Respondent's restriction on Petitioner's outgoing mail must meet a higher standard set forth in *Procunier v. Martinez*, 416 U.S. 396, 413 (1974), *overruled on other grounds by Thornburgh v. Abbott*, 490 U.S. 401, 404 (1989), which states that restrictions on the content of outgoing mail must: (1) "further an important or substantial governmental interest unrelated to the suppression of

---

[1] Docket citations refer to the page numbers generated by the Court's Electronic Case Filing System (ECF).

- 2 -

expression," and (2) "the limitation of First Amendment freedoms [is] no greater than is necessary or essential to the protection of the particular governmental interest involved." (Doc. 28.)

Respondent answered that Petitioner's actions were not protected under the First Amendment because the mailed document constituted J.M.'s third-party speech, not Petitioner's. (Doc. 29 at 1-2.) Regardless of Petitioner's lack of standing, Respondent argued that the violation meets the standard set forth in *Procunier*. *Id.* at 3-5. First, disciplining for violations of the mail monitoring procedures furthers the government's substantial interest in maintaining order and safety in prisons by prohibiting circumvention the procedures instituted for mail monitoring. *Id.* Second, because the Code for which Petitioner was found to have violated is not content-based, the Code serves an interest "unrelated to the suppression of expression." *Id.* at 4 (quoting *Procunier*, 416 U.S. at 413). Finally, the limitation is no greater than necessary because the reduction of Good Conduct Time was not based on censorship of speech, but rather was due to a subversion of the mail monitoring policies that limited J.M. from mailing the Appeal to P.M. *Id.* at 4-5.

Petitioner responded that because he authored J.M.'s Appeal, it was his speech and therefore afforded First Amendment protection. (Doc. 37 at 3.) Furthermore, Petitioner had an interest in exposing BOP misconduct, and this information was publicly available. *Id.* at 4.

## II. DISCIPLINARY HISTORY

While conducting a review of outgoing mail, on February 24, 2016, Special Investigative Services Technician D. Madrid found mail sent by Petitioner, which consisted of the Appeal of inmate J.M. addressed to J.M.'s wife, P.M. (Doc. 1 at 10; Ex. A, Att. 4, Doc. 11-3 at 12.) Madrid created an incident report on February 24, 2016, noting that J.M. was on mail restriction, and was unable to mail the documents himself. (Ex. A, Att. 4, Doc. 11-3 at 28.)

Petitioner alleges that Madrid's statements in the report were false, including that: (1) Petitioner claimed J.M. asked Petitioner to send the Appeal to P.M.; (2) that Petitioner

was aware that he was prohibited from mailing such information; and (3) J.M. made P.M. contact Petitioner's mother. (Doc. 1 at 10-12.) Instead, Petitioner claims he told Madrid that J.M. did *not* ask him to mail the Appeal, instead Petitioner's mother told Petitioner that P.M. had requested the mailing. *Id.* at 10. Furthermore, he did not admit he was aware his actions were a violation, but asserts he asked Madrid, "how can that be a violation of policy?" *Id.*

The incident report was then investigated by Lieutenant S. Hellman, who provided a copy of the report to Petitioner on the same day of the incident. (Ex. A, Att. 4, Doc. 11-3 at 17, 28.) Petitioner claims he made a statement to Lt. Hellman consistent with that given to Madrid. (Doc. 1 at 12.) Lt. Hellman reported that Petitioner claimed his mother had been contacted by J.M.'s wife, P.M., who asked that Petitioner mail her the Appeal. (Ex. A, Att. 4, Doc. 11-3 at 28-29.) Lt. Hellman also reported that Petitioner stated J.M. asked him to send the mailing to P.M., and Petitioner knew this was in violation of the BOP's policies. *Id.* The incident report noted that Petitioner later claimed he did not know that his actions were in violation of BOP rules. *Id.* at 28. Lt. Hellman found the claim had sufficient factual basis to forward for further review. *Id.* at 29.

Two days later, Petitioner had a hearing in front of the Unit Discipline Committee ("UDC"). (Doc. 1 at 11.) Petitioner claims he gave the same explanation for the mailing, but believes the counselor only made a note indicating Petitioner was unaware that his actions were in violation of the rules of conduct. *Id.* The UDC found the claim serious enough to warrant review by the DHO and forwarded the matter to the DHO for a disciplinary hearing. (Ex. A, Att. 4, Doc. 11-3 at 28.) Petitioner was given notice of the disciplinary hearing on February 26, 2016. *Id.* at 25-26.

A hearing occurred on March 3, 2016, led by DHO Phillips-Sluder. *Id.* at 17-19. Petitioner waived his right to assistance from a staff representative and presented evidence including: his oral statement, his written statement, a statement from his mother, and an email from his mother. (Doc. 1 at 11; Ex. A, Att. 4, Doc. 11-3 at 20-24.) The DHO relied on D. Madrid's report, Petitioner's statements, and his written evidence when coming to a decision. (Ex. A, Att. 4, Doc. 11-3 at 18.) The DHO concluded that

Petitioner violated Code 296A, by attempting to circumvent the mail monitoring procedures. *Id*. The DHO explained that Petitioner's action "poses a serious threat to the ability of the staff to control the use of the mail. [Petitioner's] actions interfered with the ability of staff to monitor whether inmates are using mail for prohibited or illegal purposes." *Id*. at 19. As discipline, the DHO subtracted twenty-seven (27) days Good Conduct Time. *Id*. at 18-19.

### III. STANDARD OF REVIEW

#### a. 28 U.S.C. § 2241

A federal prisoner who seeks to challenge the legality of a sentence must generally do so by motion raised in the sentencing court pursuant to 28 U.S.C. § 2255. *See Harrison v. Ollison*, 519 F.3d 952, 954 (9th Cir. 2008). In contrast, a prisoner who seeks to challenge the manner, location, or conditions relating to execution of his sentence must bring a petition pursuant to 28 U.S.C. § 2241 in the custodial court. *Hernandez v. Campbell*, 204 F.3d 861, 864 (9th Cir. 2000). In this instance, Petitioner challenges the DHO's reduction in Good Conduct Time in violation of his First Amendment Rights and the Code of Federal Regulations. Therefore, he challenges the manner in which his sentence is being executed and a petition under § 2241 is proper. *See e.g., McQuown v. Ives*, 3:16-CV-01927-KI, 2017 WL 359181, at *3 (D. Or. Jan. 24, 2017) (District Court has jurisdiction over § 2241 Petitioner alleging the application of BOP policies violate the Constitution or federal law); *Close v. Thomas*, 653 F.3d 970, 973-74 (9th Cir. 2011) ("[J]udicial review remains available for allegations that BOP action is contrary to established federal law, violates the United States Constitution, or exceeds its statutory authority.").

Furthermore, prior to filing a petition under 28 U.S.C. § 2241, a petitioner must exhaust his administrative remedies. *Laing v. Ashcroft,* 370 F.3d 994, 997 (9th Cir. 2004). Exhaustion is not disputed by Respondent. (Doc. 11 at 2.)

///
///
///

### b. Prison Disciplinary Rights

"Prison disciplinary proceedings are not part of a criminal prosecution, and the full panoply of rights due a defendant in such proceedings does not apply." *Wolff v. McDonnell,* 418 U.S. 539, 556 (1974). To discipline an inmate and reduce his Good Conduct Time, due process requires the inmate is afforded: (1) notice of the violation; (2) a written explanation of the disciplinary action taken and reasons such action; (3) a chance to present evidence; (4) assistance preparing a defense if requested; and (5) an impartial fact finder. *Id.* at 563-72.

Petitioner acknowledges that his due process rights were not violated, and instead argues it is his First Amendment rights that were impinged. (Doc. 25 at 2.) Therefore, the Court will not review the due process argument illustrated in Respondent's Response. (*See* Doc. 11 at 9-12 (explaining legal standard and how Petitioner's proceedings met due process requirements).)

Petitioner asserts that in Ground One, his First Amendment rights were violated because the mail restriction regulations as they apply to his case do not meet the higher standard set out in *Procunier*, 416 U.S. at 413, which requires that a restriction furthers an important governmental interest and is no greater than necessary. (Doc. 25 at 2-3; Doc. 37 at 1.) Petitioner also believes that for Ground Two, the amount of evidence necessary to reduce the amount of Earned Time Credits is more than the "some evidence" necessary under due process; it requires using the "greater weight" standard because he presented contradictory evidence in the disciplinary hearing. *Id*. at 2.

## IV. GROUND ONE: FIRST AMENDMENT VIOLATION

Prisoners are afforded a First Amendment right to both send and receive mail. *Witherow v. Paff,* 52 F.3d 264, 265 (9th Cir. 1995) (per curiam). But, the test for whether a regulatory restriction on outgoing mail violates a prisoner's First Amendment rights is more stringent than the test for incoming mail. *See Lane v. Feather*, 610 F. App'x 628, 628 (9th Cir. 2015); *Lane v. Tews*, CV 14-1324-GW (PLA), 2016 WL 8738265, at *4 (C.D. Cal. Dec. 7, 2016), *report and recommendation adopted*, CV-14-1324-GW (PLA), 2017 WL 1423700 (C.D. Cal. Apr. 14, 2017); *Harrison v. Institutional Gang of*

*Investigations*, C 07-3824 SI (PR), 2010 WL 653137, at *4 (N.D. Cal. Feb. 22, 2010); c*f. Thornburgh v. Abbott*, 490 U.S. 401, 404 (1989) (restrictions on *incoming* mail need only be "reasonably related to legitimate penological interests"). When regulatory restrictions are placed on a prisoner's right to send outgoing mail, it must meet the test laid out in *Procunier. Barrett v. Belleque*, 544 F.3d 1060, 1062 (9th Cir. 2008). Under *Procunier*, limitations on inmates' correspondence may be enforced when the regulations "further an important or substantial governmental interest unrelated to the suppression of expression" and "the limitation of First Amendment freedoms [is] no greater than is necessary or essential to the protection of the particular governmental interest involved." *Procunier*, 416 U.S. at 413. Prison administrators do not have to show that failing to censor correspondence would certainly led to adverse consequences; administrators are granted "[s]ome latitude in anticipating the probable consequences" of permitting certain correspondence in a prison setting. *Id*. at 414.

However, a restriction placed on outgoing mail is in violation of the First Amendment rights of the person exercising his rights only. A person asserting a First Amendment right "does not speak . . . by handling another person's speech." *Knox v. Brnovich*, 907 F.3d 1167, 1182 (9th Cir. 2018) (internal quotation marks omitted) (finding claimant had no First Amendment protection by delivering another person's ballot); *see also Voting for America, Inc. v. Steen*, 732 F.3d 382, 390 (5th Cir. 2013) (third-party collection and delivery of voter registration application not speech).

Mailing a fellow inmate's Administrative Remedy Appeal did not restrict Petitioner's speech, was not an expressive activity, and affords him no protection as a third-party conveyor of speech. That Petitioner helped prepare the Appeal does not change this analysis, as the Appeal could only be submitted by J.M., *see* 28 C.F.R. § 542.16(a), and therefore can only be construed as J.M.'s speech, not Petitioner's. Furthermore, the mailing was not a written communication by Petitioner to P.M. about the Appeal, but was simply a copy of J.M.'s Appeal, and constituted an unauthorized relaying of J.M.'s speech to P.M., not Petitioner's exercise of expression. Despite his

claims to the contrary, Petitioner was not in any way acting in the role of Émile Zola: *J'Accuse . . .!*

The Court finds that Petitioner does not have standing to raise a First Amendment argument because the Appeal is not Petitioner's speech and is therefore not protected speech. Because of this, the Court need not address the constitutional issue of whether the regulation is narrowly tailored to further an important governmental interest.

## V. GROUND TWO: CODE OF FEDERAL REGULATIONS VIOLATION

"[T]he requirements of due process are satisfied if some evidence supports the decision by the prison disciplinary board to revoke good time credits." *Superintendent v. Hill*, 472 U.S. 445, 455 (1985). In this instance, the Court need not re-examine and re-weigh all of the evidence, but looks for "any evidence" supporting the DHO's decision. *Id.* at 455-56; *Cato v. Rushen*, 824 F.2d 703, 704-05 (9th Cir. 1987). However, the Code of Federal Regulations concludes that when there is conflicting evidence in the disciplinary hearing record, the decision of the BOP must be supported by a "greater weight of the evidence." 28 C.F.R. § 541.17(f).

Petitioner violated the regulatory restriction prohibiting circumventing mail monitoring procedures. The Code of Federal Regulations describes the offense:

> Use of the mail for abuses other than criminal activity which circumvent monitoring procedures (e.g, use of the mail to commit or further a High category prohibited act, special mail abuse; writing letters in code; directing others to send, *sending*, or receiving *a letter through unauthorized means*; *sending mail for other inmates without authorization*; *sending correspondence to a specific address with directions or intent to have the correspondence sent to an unauthorized person*; and using a fictitious return address in an attempt to send or receive unauthorized correspondence).

28 C.F.R. §541.3 Table 1, Code 296 (emphasis added). Committing a mail abuse act is a high severity level act that may result in withholding of Good Conduct Time. 28 C.F.R. § 541.3(b); 28 C.F.R. § 541.3 Table 2. In addition, the "Aiding, attempting, abetting, or making plans to commit any of the prohibited acts is treated the same as committing the act itself." 28 C.F.R. § 541.3(a). "This regulation puts a reasonable prisoner on

reasonable notice that sending a letter to someone with a direction to have the letter sent to an unauthorized third individual was a violation of BOP regulations." *Johnson v. Zuniga*, 1:15-CV-00493-SKO HC, 2017 WL 6513229, at *4 (E.D. Cal. Dec. 20, 2017).

Petitioner admitted that he mailed J.M.'s Appeal to J.M.'s wife, P.M. (Doc. 25 at 3.) He further admitted that P.M. contacted Petitioner's mother to ask if Petitioner would mail the Appeal to P.M. (Doc. 1 at 12.) In essence, Petitioner was attempting to send J.M.'s mail to a person J.M. was unauthorized to communicate with in this fashion. At the request of P.M., Petitioner attempted to provide J.M.'s unauthorized communication to her. This undermined the safety and order of the BOP's system for correspondence. Petitioner circumvented J.M.'s mailing limitations by mailing J.M.'s communications in his stead.

Petitioner's argument that his contradictory evidence mandates that the BOP's decision be supported by the "greater weight of the evidence" fails for two reasons: (1) his evidence did not contradict a finding that Petitioner circumvented mail monitoring procedures, and (2) even if it had, the decision is adequately supported by a greater weight of evidence.

Petitioner claims that his statements and his evidence from his mother conflicted with D. Madrid's, that the greater weight of the evidence leaned in his favor, and therefore the DHO should not have found him guilty of subverting mail monitoring procedures. However, this is not the case. It is a fact that J.M. was on mail restriction. In addition, Petitioner admitted he attempted to mail J.M.'s document to P.M. He also admitted that it was not a personal correspondence to P.M., but relayed the Appeal to P.M., which J.M. was prohibited from doing on his own. Finally, the DHO confirmed that Petitioner was aware of the mailing procedures because "it is made clear in policy, and in the Inmate Handbook that [Petitioner] received upon [his] arrival." (Ex. A, Att. 4, Doc. 11-3 at 18.) Petitioner signed and acknowledged these rules. *Id.*
Furthermore, Petitioner's contention that mailing J.M.'s Appeal at the request of P.M. is not a violation of mailing procedures because it was requested by P.M. is unpersuasive. While Petitioner was permitted to mail P.M. personally, his mailing was not personal, but

was a surreptitious means of relaying prohibited information. Who requested the Appeal is insignificant, what matters is that Petitioner attempted to circumvent the limitations on J.M.'s communications with his wife by providing J.M.'s documents to his wife.

Given all the evidence presented, a greater weight of the evidence supports the DHO's decision that Petitioner's actions constituted "sending mail for other inmates without authorization" in violation of 28 C.F.R. §541.3 Table 1, Code 296. Accordingly, the DHO's withholding of Good Conduct Time was appropriate.

## I. RECOMMENDATION

For the reasons stated herein, the Magistrate Judge recommends that the District Judge enter an order:

1. **FINDING** that Petitioner does not have standing to raise a First Amendment claim;
2. **FINDING** the greater weight of the evidence supported the BOP's disciplinary determination;
3. **FINDING** that Petitioner is not entitled to relief under 28 U.S.C. § 2241; and
4. **DENYING** Petitioner's Petition Under 28 U.S.C. § 2241 for a Writ of Habeas Corpus by a Person in Federal Custody. (Doc. 1.)

Pursuant to 28 U.S.C. § 636(b) and the Federal Rules of Civil Procedure 72(b)(2), any party may serve and file written objections within fourteen (14) days after being served with a copy of this Report and Recommendation. A party may respond to another party's objections within fourteen (14) days after being served with a copy of the objection. Filed objections should use the following case number:

### No. CV-17-00333-TUC-JAS

Failure to timely object to the factual and legal determination of the Magistrate judge may waive Petitioner's right to *de novo* review. The Clerk of Court shall send a copy of this Report and Recommendation to all parties.

Dated this 28th day of December, 2018.

_____
Bernardo P. Velasco
United States Magistrate Judge